Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 13-1357

DAI XIAO,

Petitioner,

v.

ERIC H. HOLDER, JR.,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Souter,* Associate Justice,
and Thompson, Circuit Judge.

Jim Li on brief for petitioner.
Elizabeth D. Kurlan, Trial Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, Stuart F. Delery, Assistant Attorney General, Civil Division, and Holly M. Smith, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

July 11, 2014

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** Petitioner Dai Xiao, a native and citizen of China, seeks review of an order of the Board of Immigration Appeals (BIA) affirming the order of an immigration judge (IJ) denying his applications for relief from removal. We deny the petition for review.

## I.

When he was still living in China in 2007, Xiao converted to Christianity under the guidance of his aunt. After his conversion, he attended underground religious services at the houses of fellow church members rather than those authorized by the Chinese government. He believed that "the government approve[d] church . . . just taught you how to love the country, how to love the party, . . . [but not] to love Jesus Christ."

In April 2008, police officers warned Xiao's aunt against continuing to hold church gatherings, but she persisted, and in July police arrived at her house during a church service and arrested everyone there, including Xiao. For the next three days, Xiao was held and interrogated by police about his religious activities and urged to denounce his aunt. When he refused, he was beaten by the police, on one occasion to the point of nearly losing consciousness. On his final day in captivity, he was forced to sign a pledge to discontinue his participation in unauthorized church activities. He did not seek medical treatment for any injuries suffered during the detention.

-2-

During the ensuing ten months, police officers showed up sporadically at Xiao's house to check on him, but they did not otherwise interfere in any way with his education, employment, or daily life. He continued to attend underground religious services at church members' houses, and his practice apparently went undetected by the authorities.

In 2009, with permission from the Chinese government, Xiao was lawfully admitted into the United States on a non-immigrant student visa to study at Kansas State University. After his arrival, he continued his Christian religious practice, regularly frequenting church services and Bible study group sessions. He did not, however, attend his classes at Kansas State, a condition of his entry into the United States, see 8 C.F.R. § 214.2(f), and the year after his arrival, Xiao was charged as removable for failing to comply with the terms of his student visa. See 8 U.S.C. § 1227(a)(1)(C)(i). He conceded removability, but applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), arguing that he feared religious persecution and torture if returned to China.

The IJ denied the application for asylum on the ground that Xiao's "one time arrest and detention of three days" was not the sort of severe mistreatment characteristic of persecution. The judge also held that Xiao's fear of being persecuted if returned to China was not objectively reasonable, given the evidence that he

was able to live and practice his religion largely undisturbed during the ten months he remained in the country after his arrest and brief detention. The IJ thought it also counseled against the reasonableness of his fear that Xiao's aunt continued to live and observe Christian practice in China without suffering persecution. Although she was again arrested and detained for organizing unauthorized church activities in 2011, the judge determined that two such episodes over a four-year period were insufficient to constitute persecution. From the finding of Xiao's inability to meet his burden for asylum it followed that he failed to satisfy the more stringent standards for entitlement to withholding of removal and CAT relief.

Xiao appealed to the BIA, which affirmed and adopted the immigration judge's reasoning as to asylum and withholding of removal. The Board noted that Xiao did not specifically contest the denial of CAT relief, and so considered the issue waived. This petition for review limited to the BIA's denial of the asylum claim followed.[1]

## II.

We review the BIA's legal conclusions de novo and factual findings for substantial evidence, taking them as true unless the

---

[1] The petition does not advance any argument related to the applications for withholding of removal and CAT relief. Any challenge to the BIA's denial of those applications is therefore waived. See Vasili v. Holder, 732 F.3d 83, 92 (1st Cir. 2013).

record compels a contrary conclusion. See Guaman-Loja v. Holder, 707 F.3d 119, 122 (1st Cir. 2013). To show eligibility for asylum, Xiao must show he is unable to return to China because he either suffered past persecution or faces a well-founded fear of future persecution on account of his religion. See Singh v. Holder, 750 F. 3d 84, 86 (1st Cir. 2014).

The petition claims the record compels the conclusion that Xiao was subjected to religious persecution by the Chinese government. Given the existing precedent explaining persecution under 8 U.S.C. § 1101(a)(42), however, there is no question that a single episode of ill treatment involving a three-day detention and physical abuse not requiring medical attention is not severe enough for a finding of past persecution. See Khan v. Mukasey, 549 F.3d 573, 576-77 (1st Cir. 2008) (no persecution where petitioner was once beaten with wooden sticks and detained for ten days without seeking medical treatment upon release). Xiao acknowledges as much in his brief, but argues that the persecution in his case came in the form of the Chinese government's "systematic" suppression of his ability to practice Christianity. He specifically points to being forced to sign the pledge to abstain from attending underground church services, as well as to the occasional visits of police officers to his house, presumably intended to monitor and induce compliance with the pledge.

But it is clear under existing law dealing with restrictive circumstances short of physical abuse that the treatment described here fell short of persecution. After his arrest and brief detention, Xiao was able to live, work and pursue his studies freely in China for ten months, at which point the Chinese government granted him permission to study in the United States. During that same period, there were no repercussions despite his continued attendance at underground church services, in defiance of his pledge to the contrary. Granted, the police visits to his house would reasonably provoke fear of further arrest and detention, and a "dictionary reading layperson" might think that living under the specter of arrest for a prohibited religious practice should constitute persecution. Id. at 577. But this Court's cases make clear that "unpleasantness, harassment, and even basic suffering" of this sort is not sufficient to sustain an asylum claim. Id. at 576 (quoting Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000); see also Attia v. Gonzales, 477 F.3d 21, 23-24 (1st Cir. 2007) ("a general climate of discrimination" is insufficient to compel finding of persecution); Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) (no persecution compelled where petitioner was arrested, threatened with death, and so severely beaten that he lost consciousness and was hospitalized).

The BIA's determination that Xiao lacks an objectively reasonable fear of being persecuted if returned to China was also

sound. See Singh, 750 F. 3d at 86 (well-founded fear of future persecution is shown where an asylum applicant makes "an offer of specific proof that his fear is both subjectively genuine and objectively reasonable"). Xiao presented no evidence or argument indicating that he will be subject to greater restrictions on the practice of his religion than previously experienced, which do not amount to persecution, as we have just said. Nor does Xiao's aunt's second arrest and detention for organizing underground church services, which occurred three years after her initial arrest, compel a different result. Cf. Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (no finding of persecution compelled where petitioner was arrested, detained, and beaten seven times over a two-year period, where none of the beatings required medical treatment).

III.

The petition for review is DENIED.